## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGE L. BARRETO, On Behalf of Herself and All Others Similarly Situated, )<br>)<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>CELATOR PHARMACEUTICALS, INC., MICHAEL R. DOUGHERTY, SCOTT JACKSON, JOSEPH A. MOLLICA, JEAN-PIERRE BIZZARI, RICHARD S. KOLLENDER, JOSEPH M. LOBACKI, SCOTT MORENSTEIN, and NICOLE VITULLO, )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Defendants. )<br>)<br>)<br>) | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jorge L. Barreto ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is a class action brought on behalf of the public stockholders of Celator Pharmaceuticals, Inc. ("Celator" or the "Company") against Celator and its Board of Directors (the "Board" or the "Individual Defendants"), to enjoin a proposed transaction announced on May 31, 2016 (the "Proposed Transaction"), pursuant to which Celator will be acquired by Jazz Pharmaceuticals plc ("Parent") and its wholly-owned subsidiary, Plex Merger Sub, Inc. ("Merger Sub," and together with Parent, "Jazz").

2.     On May 27, 2016, the Board caused Celator to enter into an agreement and plan of merger (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, stockholders of Celator will receive $30.25 per share in cash.

3.     In connection with the Proposed Transaction, defendants issued materially incomplete and misleading disclosures in the Solicitation/Recommendation Statement (the "Solicitation Statement") filed with the United States Securities and Exchange Commission (the "SEC") on June 10, 2016.  The Solicitation Statement is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.

4.     Plaintiff brings class claims for violations of sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to section 27 of the Exchange Act.  Plaintiff seeks enjoinment of the Proposed Transaction.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to section 27 of the Exchange Act.

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Celator is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual

Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## **PARTIES**

8.      Plaintiff Jorge L. Barreto is, and has been at all times relevant hereto, a continuous stockholder of Celator.

9.      Defendant Celator is a Delaware corporation and maintains its principal executive offices at 200 Princeton South Corporate Center, Suite 180, Ewing, New Jersey 08628.   The Company is a clinical-stage biopharmaceutical company.   Celator's common stock is traded on the NasdaqCM under the ticker symbol "CPXX."

10.      Defendant Michael R. Dougherty ("Dougherty") has served as a director of Celator since July 2013, Chairman of the Board since September 2014, and Executive Chairman since August 2015.

11.      Defendant Scott T. Jackson ("Jackson") is a director of Celator and has served as Chief Executive Officer ("CEO") of the Company since April 2008.

12.      Defendant Joseph A. Mollica ("Mollica") has served as a director of Celator since 2007.   According to the Company's Definitive Proxy Statement filed with SEC on April 28, 2016 (the "2016 Proxy"), Mollica is Chair of the Nominating and Governance Committee and a member of the Compensation Committee.

13.      Defendant Jean-Pierre Bizzari ("Bizzari") has served as a director of Celator since February 2015.   According to the 2016 Proxy, Bizzari is a member of the Nominating and Governance Committee.

14.      Defendant Richard S. Kollender ("Kollender") has served as a director of Celator since August 2012.   According to the 2016 Proxy, Kollender is Chair of the Audit Committee and

a member of the Compensation Committee.

15.     Defendant Joseph M. Lobacki ("Lobacki") has served as a director of Celator since December 2013.  According to the 2016 Proxy, Lobacki is a member of the Audit Committee.

16.      Defendant Scott Morenstein ("Morenstein") has served as a director of Celator since 2013.  According to the 2016 Proxy, Morenstein is a member of the Nominating and Governance Committee.

17.     Defendant Nicole Vitullo ("Vitullo") has served as a director of Celator since 2005. According to the 2016 Proxy, Vitullo is a member of the Audit Committee.

18.     The defendants identified in paragraphs 11 through 18 are collectively referred to herein as the "Individual Defendants."  By virtue of their positions as directors and/or officers of Celator, the Individual Defendants are in a fiduciary relationship with plaintiff and the other public stockholders of Celator.

19.     Defendants Dougherty, Jackson, Mollica, Bizzari, Kollender, Lobacki, Morenstein and Vitullo are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT NON-PARTIES

20.     Jazz is a public limited company organized under the laws of Ireland with its corporate headquarters located at Fourth Floor, Connaught House, One Burlington Road, Dublin 4, Ireland.  Jazz is a biopharmaceutical company specializing in identifying, developing and commercializing pharmaceutical products.  Jazz trades on the NASDAQ under the ticker symbol "JAZZ."

21.     Merger Sub is a Delaware corporation and an indirect wholly-owned subsidiary of Jazz created for the purpose of effectuating the Proposed Transaction.

4

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Celator common stock (the "Class").  Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

23.     Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

24.     The Class is so numerous that joinder of all members is impracticable.  As of May 27, 2016, there were approximately 42,871,191 shares of Celator common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants have breached their fiduciary duties owed to plaintiff and the Class and/or aided and abetted such breaches; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the

interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

29.     Celator is an oncology-focused biopharmaceutical company that develops products to improve patient outcomes in cancer.

30.     Celator's proprietary technology platform, CombiPlex®, enables the rational design and rapid evaluation of optimized combinations of anti-cancer drugs, incorporating traditional chemotherapies as well as molecularly targeted agents to deliver enhanced anti-cancer activity.  CombiPlex addresses several fundamental shortcomings of conventional combination regimens, as well as the challenges inherent in combination drug development, by identifying the most effective synergistic molar ratio of the drugs being combined in vitro, and fixing this ratio in a nano-scale drug delivery complex to maintain the optimized combination after administration and ensuring exposure of this ratio to the tumor.

31.     Celator's lead product is VYXEOS™ (also known as CPX-351).  VYXEOS is a nano-scale liposomal co-formulation of cytarabine and daunorubicin at a synergistic 5:1 molar ratio.  VYXEOS represents a novel approach to developing combinations of drugs in which molar ratios of two drugs with synergistic anti-tumor activity are encapsulated in a nanoscale liposome in order to maintain the desired ratio following administration.  The United States Food and Drug Administration (the "FDA") granted Breakthrough Therapy designation to VYXEOS for the treatment of adults with therapy-related acute myeloid leukemia ("AML") or AML with

6

myelodysplasia-related changes ("AML-MRC").  VYXEOS was granted orphan drug status for the treatment of AML by the FDA and the European Commission.  VYXEOS was also granted Fast Track designation for the treatment of elderly patients with secondary AML by the FDA.

32.     Celator has also conducted clinical development on CPX-1, a nano-scale liposomal formulation of irinotecan: floxuridine studied in colorectal cancer; and has a preclinical stage product candidate, CPX-8, a hydrophobic docetaxel prodrug nanoparticle formulation.

33.     More recently, Celator has advanced its CombiPlex platform and broadened its application to include molecularly targeted therapies.

34.     On May 10, 2016, the Company issued a press release wherein it reported its first quarter 2016 financial results and provided a business update.  Individual Defendant Jackson, CEO of Celator, summarized the results as follows:

> The first quarter of 2016 was transformative for Celator[.] Our Phase 3 trial of VYXEOS™ demonstrated a statistically significant improvement in overall survival, among other benefits, in patients with high-risk acute myeloid leukemia (AML) and we plan to submit a New Drug Application (NDA) to the Food and Drug Administration (FDA) by the end of the third quarter of this year. We look forward to presenting additional data at the American Society of Clinical Oncology (ASCO) annual meeting next month. In addition, following the positive Phase 3 results, we raised capital that we believe is sufficient to fund planned operations into 2018.

35.     On June 6, 2016, Celator issued a press release wherein it announced its results from its Phase 3 trial of VYXEOS in patients with high-risk (secondary) AML.  As previously reported, the trial met its primary endpoint demonstrating a statistically significant improvement in overall survival.  The Phase 3 trial compared to the standard of care regimen of cytarabine and daunorubicin known as 7+3.

*The Process Leading Up to the Merger Agreement*

36.     According to the Solicitation Statement, on September 8, 2014, the Company

engaged MTS Health Partners, L.P. ("MTS") to act as its financial advisor.  The Solicitation Statement fails to disclose what prompted the Board to engage MTS at that time.

37.    On November 13, 2014, Individual Defendant Vitullo introduced Individual Defendant Jackson to a representative of Parent.  The Solicitation Statement fails to disclose the preexisting relationship between Vitullo and Parent.

38.    Representatives of Celator and Parent met on December 6, 2014, and the parties entered into a confidentiality agreement on December 22, 2014.

39.    According to the Solicitation Statement, "[i]n response to in-bound requests, the Company then held a number of routine management meetings with representatives of several pharmaceutical companies, including with Parent and a company referred to . . . as 'Party A,' to discuss potential strategic transactions involving the Company (including a potential partnership arrangement to commercialize VYXEOS outside of the United States and an acquisition of the Company), during which financial, commercial, clinical, legal, regulatory and other due diligence was conducted."  The Solicitation Statement fails to provide any detail with respect thereto, including how many "in-bound requests" the Company received, as well as the number of parties with which management met.

40.    The Company entered into confidentiality agreements and engaged in due diligence with an undisclosed number of parties.

41.    In March and April 2015, Parent and Party A submitted non-binding indications of interest to acquire Celator, "in both cases for an upfront cash payment per Share ranging from $3.00 to $4.00 per Share, and a contingent value right that would pay an additional per Share amount upon achievement of certain milestones relating to the development and commercialization of VYXEOS, which rights ranged from $4.00 to $6.75 per Share."

42.     The Board subsequently formed a transaction committee (the "Transaction Committee") consisting of Individual Defendants Vitullo, Jackson, Dougherty, Kollender, and Morenstein.   The Solicitation Statement fails to disclose what prompted the formation of the Transaction Committee, including whether there was any potential or perceived conflict of interest.

43.     Between June 24, 2015 and March 14, 2016, the Company entered into an undisclosed number of confidentiality agreements, including with "Party B."   The Solicitation Statement fails to disclose whether any of the confidentiality agreements contained standstill and/or "don't ask, don't waive" ("DADW") provisions.

44.     On January 11, 2016, Derek Miller ("Miller"), Chief Business Officer of the Company, met with representatives of Parent to discuss VYXEOS.   The following day, Miller, Dougherty, and Jackson met with representatives of Party B to discuss VYXEOS.

45.     The Company subsequently entered into fourteen additional confidentiality agreements.   The Solicitation Statement fails to disclose whether any of the confidentiality agreements contained standstill and/or DADW provisions.

46.     On March 24, 2016, Dougherty and Jackson received a call from Party B's CEO, who expressed Party B's interest in VYXEOS.

47.     On April 14, 2016, the Company entered into a confidentiality agreement with "Party C."   Again, the Solicitation Statement fails to disclose whether the confidentiality agreement contained standstill and/or DADW provisions.

48.     On April 18 and April 26, 2016, Miller and other representatives of the Company met with representatives of Parent.

49.     On April 28, 2016, Parent submitted a written non-binding indication of interest to acquire the Company for $20.00 per share in cash.

50.     Between April 28 and May 2, 2016, representatives of MTS contacted Parent, Party A, and Party B to gauge their interest in pursuing a strategic transaction with the Company.

51.     On May 2, 2016, the Board met telephonically and "had a preliminary discussion regarding potential conflicts of interest between the Company, on the one hand, and members of the Board and/or MTS, on the other, and discussed the importance of discussing any such issues with the Board."  The Solicitation Statement fails to disclose the nature of these potential conflicts of interest and the discussions relating thereto.

52.     MTS subsequently distributed a letter to the potential bidders, requesting proposals on or before May 20, 2016.

53.     On May 3, 2016, the Company entered into a confidentiality agreement with "Party D."  The Solicitation Statement fails to disclose whether the confidentiality agreement contained standstill and/or DADW provisions.

54.     On May 20, 2016, the Company received six written non-binding indications of interest.  The indications of interest from Parent, Party B, Party C, and Party D contemplated an acquisition of the Company, and those from "Party E" and "Party F" contemplated a partnership arrangement to commercialize VYXEOS outside of the United States.  Of the proposals to acquire Celator, Parent's was the second-lowest.

55.     Despite their interest, the Board informed Party E and Party F that it "would only be considering indications of interest relating to an acquisition of the Company[.]"

56.     On May 25, 2016, the Company received revised non-binding indications of interest from Parent, Party B, and Party D.  Party B submitted an offer for $23.00 per share in cash plus an additional $2.00 per share in contingent value rights; Party D submitted an offer for $24.50 per share in cash; and Parent submitted an offer for $23.00 per share in cash, which was the lowest

offer.

57.     On May 26 and 27, the Company received revised non-binding indications of interest from Parent ($30.25 per share in cash), Party B ($25.50 per share in cash), and Party D ($24.50 per share in cash).

58.     On May 27, the Board determined that Parent "had been selected as the winning bidder." The very same day, the parties executed the Merger Agreement.

***The Materially Incomplete and Misleading Solicitation Statement***

59.     Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. As discussed below and elsewhere herein, the Solicitation Statement omits material information that must be disclosed to Celator's stockholders to enable them to render an informed decision with respect to the Proposed Transaction. Without this material information, the disclosures made by the Solicitation Statement are materially misleading.

60.     The Solicitation Statement omits material information with respect to the process and events leading up to the Proposed Transaction, as well as the opinions and analyses of the Company's financial advisor, MTS. This omitted information, if disclosed, would significantly alter the total mix of information available to Celator's stockholders.

61.     The Solicitation Statement materially misrepresents the potential for conflicts of interest leading to the Proposed Transaction. Among other things, the Solicitation Statement fails to disclose:

        (a)     the nature of preexisting relationship between Individual Defendant Vitullo and Parent;

        (b)     what prompted the formation of the Transaction Committee, including whether there was any potential or perceived conflict of interest;

11

(c)     the nature of the potential conflicts of interest as discussed at the May 2, 2016 Board meeting and the discussions relating thereto;

(d)     the nature of the work performed in the past two years by MTS for the Company and whether MTS ever performed any work for Jazz and its affiliates, and if so, the compensation received for such work; and

(e)     the timing and nature of all communications regarding future employment or directorship of Celator's officers and directors, including who participated in all such communications, even though the Solicitation Statement states that "Parent or its affiliates may enter into employment or other arrangements with the Company's management[.]"

62.     Failing to disclose this information misleads stockholders as to any potential conflicts of interest that would lead Celator to favor Parent over other potential buyers.

63.     The Solicitation Statement fails to disclose whether any of the confidentiality agreements entered into between Celator and the potentially interested parties contained standstill and/or DADW provisions.  This omission misleads Celator stockholders into believing that the participants in the auction process may now freely submit a bid to acquire Celator.  In fact, standstill and DADW provisions would prevent these parties from making an offer superior to Parent's current offer.

64.     With respect to MTS's *Discounted Cash Flow Analyses* ("*DCF*"), the Solicitation Statement fails to disclose, *inter alia*: (i) the range of 2017 prices per vial; (ii) the basis for selecting a revenue achievement factor ranging from 80% to 100%; (iii) the net operating losses that Company management estimates will be generated in the future; and (iv) the inputs and assumptions underlying MTS's weighted average cost of capital analysis.

65.     With respect to MTS's *Comparable Companies Analysis*, the Solicitation

Statement fails to disclose the individual multiples and financial metrics for each of the selected companies observed by MTS in its analysis.

66.     With respect to MTS's *Comparable Acquisitions Analysis*, the Solicitation Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions observed by MTS in its analysis.

67.     The omission of the inputs used in MTS's financial analysis materially misleads stockholders as to the details of the actual analysis conducted, providing only a vague idea of the method used to provide a fairness opinion to the Celator Board.  Celator stockholders are relying in part on the opinion of MTS in determining whether or not to tender their shares, thus full disclosure of the above-detailed underpinnings of the various analyses are material to stockholders understanding of MTS's opinion.

68.     The Solicitation Statement fails to disclose whether MTS has provided past services to Parent or its affiliates, and if so, the amount of compensation received by MTS for such services. By omitting this information, the Solicitation Statement misleads Celator stockholders into believing that MTS has not provided any services to Parent or its affiliates.  The Solicitation Statement also fails to disclose the nature of the work MTS performed in the last two years for Celator.  By disclosing the fees MTS received during this period, but not disclosing the nature of the work, defendants have provided a potentially misleading partial disclosure.

69.     The Solicitation Statement indicates that MTS Securities relied on certain internal projections for fiscal years 2016-2030 in rendering its fairness opinion.  However, the Solicitation Statement fails to disclose "the probability of success factor assigned to each of the patient populations" in each of the Low Case, Base Case and High Case, used to derive the Risk Adjusted Cash Flows.  The Risk Adjusted Cash Flows have been substantially reduced from the non-risk

adjusted cash flows.  Given that MTS used the Risk Adjusted Cash Flows in its *DCF*, stockholders need to understand the adjustments made to the non-risk adjusted cash flows, as these reductions ultimately had the effect of lowering the ranges of value in the *DCF*.

70.     Additionally, with respect to each of the Low Case, Base Case and High Case the Solicitation Statement fails to disclose for fiscal years 2016-2030, the following line items:

> (a)     Depreciation and Amortization;
>
> (b)     Taxes (or tax rate);
>
> (c)     Capital Expenditures;
>
> (d)     Changes in Net Working Capital;
>
> (e)     Stock-based compensation expense;
>
> (f)     Unlevered free cash flow ("UFCF"); and
>
> (g)     Any other adjustments to UFCF.

71.     These material omissions of the best estimates of the Company's financial future misleads Celator stockholders by providing only selected information, but not the information used by MTS in preparing its fairness opinion.  The omission needs to be remedied prior to the close of the tender offer in order to allow Celator stockholders to make a fully informed decision on the Proposed Transaction

72.     Accordingly, plaintiff seeks enjoinment of the Proposed Transaction.

73.     Defendants' failure to provide Celator stockholders with the foregoing material information constitutes a violation of the Individual Defendants' fiduciary duties as well as sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Solicitation Statement.  Absent

disclosure of the foregoing material information prior to the expiration of the tender offer, the Solicitation Statement is materially misleading.  Plaintiff and the other members of the Class will be unable to make a fully-informed decision whether to tender their shares in the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

74.     Plaintiff repeats all previous allegations as if set forth in full.

75.     SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

76.     During the relevant period, defendants disseminated the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

77.     By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Solicitation Statement.  The

Solicitation Statement was prepared, reviewed, and/or disseminated by the defendants. The Solicitation Statement misrepresented and/or omitted material facts, including material information about the unfair sale process for the Company, the unfair consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets. The defendants were at least negligent in filing the Solicitation Statement with these materially false and misleading statements. The defendants have also failed to correct the Solicitation Statement and the failure to update and correct false statements is also a violation of section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

78.     The omissions and false and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether or not to tender their shares in the Proposed Transaction. In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Solicitation Statement and in other information reasonably available to stockholders.

79.     By reason of the foregoing, the defendants have violated section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

80.     Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violation of Section 20(a) of the Exchange Act

81.     Plaintiff repeats all previous allegations as if set forth in full.

82.     The Individual Defendants acted as controlling persons of Celator within the

16

meaning of section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers or directors of Celator and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

83.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Solicitation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

85.    In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Solicitation Statement purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

86.    By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

17

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Celator, and against defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: June 29, 2016

/s Donald J. Enright

**LEVI & KORSINSKY LLP**
Donald J. Enright
235 Main Street
Hackensack, NJ 07601
(973) 265-1600

*Attorney for Plaintiff*